## STEVENS v. YELLOW CAB CO., Inc.

### No. 13822.

Court of Appeal of Louisiana. Orleans.

June 27, 1932.

John P. Sullivan and David Sessler, both of New Orleans, for appellant.

J. G. Dempsey, Jr., of New Orleans, for appellee.

JANVIER, J.

While plaintiff was riding in a taxicab belonging to defendant company and operated by one of its employees, the cab was brought to a sudden and unexpected stop, and plaintiff was thrown against one of the glass windows in the partition between the rear portion and that part which was occupied by the chauffeur. Her nose was fractured, and, claiming that at the time of the accident she was a passenger for hire and that the accident resulted from the negligence of the chauffeur, she seeks recovery in the sum of $10,045.

Defendant denies that it is liable in the premises, contending that plaintiff was not a passenger for hire, but was an invited guest of the chauffeur and was riding without the knowledge or consent of any of defendant's officers, and in violation of defendant's rules.

Defendant also maintains that the sudden stop of the taxicab was not caused by negligence on the part of the chauffeur, but was made necessary by the unexpected careless conduct of the operator of another vehicle which turned suddenly into the line of traffic ahead of defendant's cab and then stopped so suddenly that, in the emergency, in order to avert a crash, defendant's chauffeur was forced to make an emergency stop.

The trial court found defendant liable for the injuries sustained, and rendered judgment for $545, $500 of which was, apparently, intended as compensation for the personal injuries, and the balance, $45, for the value of a dress alleged to have been ruined by blood.

We have first considered the evidence concerning the sudden stop of the cab, and have reached the conclusion that the record will not justify a reversal of the finding of the district judge on the question of the negligence of the chauffeur. Had he been on the alert, he would have noticed the other car, which turned into the lane ahead of him, and he would not have followed it so closely that a sudden stop by it would have created an emergency.

If plaintiff was entitled to the protection which a carrier owes its passengers, and, for reasons which we shall hereafter set forth, we believe she was, then she was not afforded that protection. If she was a passenger and if the cause of the accident was something over which she had no control and of which she could not be expected to have had knowledge, then the burden was placed upon defendant to prove, by a preponderance of the evidence, that it was free from negligence. It has failed to do this.

Whether plaintiff was entitled to the protection which is due to a passenger for hire is more difficult of determination. She and a friend had been attending a prize fight in the Coliseum Arena, and, when the fight was over, had boarded the taxicab. She and the friend, Mr. Guinle, testified that at the

prize fight they were sitting next to two men with whom they were only very slightly acquainted, and that, when the four of them left the fight, they entered the taxicab together. The chauffeur testified, on the contrary, that the two men had entered the taxicab, and that, after the cab started, he, being acquainted with plaintiff and Mr. Guinle and seeing them on the street, had inquired of the two men in the taxicab if they objected to his picking up these friends of his, and that the two men in the cab had stated that they had no objection. The chauffeur testified that he had no intention of charging plaintiff or her friend, and that he was merely doing them a favor.

Since this was a violation of the rules of the company and therefore involved a breach of duty on his part, and since it would have been a very simple matter for him, had he been desirous of misstating the facts, to have said that all four persons entered the cab together, and since this would have been the natural thing for him to do, rather than to testify that he was violating his employer's rules, we are impressed with the testimony in this regard, and believe that the truth is that plaintiff and Mr. Guinle did not enter the taxicab with the two men. Corroborative of this is the fact that plaintiff, a woman, was not seated on the rear seat, but was on one of the temporary ones, which is not nearly so comfortable nor so large as the one in the rear. If the party of four, consisting of three men and one woman, had entered together at the same point, it is almost inconceivable that the men would have entered first and would have made the woman sit on the small uncomfortable seat.

Nevertheless, and although we believe that the testimony of the chauffeur in this regard, for the reasons given, is more credible than is that of plaintiff and Guinle, still the evidence does not indicate that the chauffeur communicated to them his intention to carry them without requiring that they pay fare. He testified that plaintiff and her friend had on other occasions been customers of the cab company. They must have paid their fares on these other occasions, and, unless they were expressly told that they were being given a free ride, there was no reason for them to assume other than that they would be required to pay at the end of the journey. That they were taken into a cab which already had passengers was no doubt unusual, but the chauffeur himself testified that he picked them up because there was a very large crowd and because there were no more taxicabs, and this, in itself, would have been an explanation of the unusual act of the chauffeur in taking extra passengers into a cab which was already hired by others.

We reach the conclusion, then, that, although the chauffeur may have really intended that no fare was to be charged, plaintiff was not aware of that intention, did not acquiesce in it, and was of the opinion that her escort was to pay for the ride. She, then, was a passenger in the legal sense of the word, and was entitled to the protection which the law requires of carriers. Since this protection was not afforded her, liability results.

■ Her injuries consisted of a broken nose, which, we note in passing, had been broken before, but which had apparently entirely healed without blemish the first time. The setting of the nose required a surgical operation, and, in addition to this, the evidence shows that plaintiff's face was almost entirely covered by adhesive tape for a period of several weeks. Dr. M. O. Miller, a physician who testified on behalf of defendant, stated, with reference to the nose, "It looks very much like there is a deformity pointing to the left." Dr. Monte Meyer, another physician, stated that the nose, at the present time, is not normal, and he said that "an operation may or may not help." While no decisions have been cited in which awards have been made for injuries of this kind, we cannot avoid the view that the amount awarded, $500, is not sufficient compensation for such injuries, and have concluded to increase the amount to $750.

■ It is contended that the record does not sufficiently show that the dress valued at $45 was so ruined that plaintiff was justified in discarding it and that she could have had it cleaned and made further use of it. While the evidence on this point is rather meager, nevertheless there is nothing to contradict plaintiff's statement that the dress was so badly stained with blood that she had to discontinue using it, and we do not feel that on this item the award should be disturbed.

The judgment appealed from is amended by increasing the amount thereof to $795, and, as thus amended, it is affirmed.

Amended and affirmed.

WESTERFIELD, J., absent, takes no part.