WALTER L. BOTHWELL, Plaintiff, and Appellee-Appellant, *v.* WHITE STAR BUS LINE, INC., Defendant and Appellant-Appellee.

No. 8301. Argued November 13, 1941.—Decided November 25, 1941.

*C. Iriarte, F. Fernández Cuyar*, and *H. González Blanes* for appellant.
*Brown, González & Newsom*, and *E. Córdova Díaz* for appellee.

MR. JUSTICE DE JESÚS delivered the opinion of the court.

On the afternoon of May 2, 1938, and near the entrance to the University of Puerto Rico, the plaintiff boarded as a passenger bus No. P–276 which belonged to the defendant company and was traveling at the time from Río Piedras to San Juan. In the course of the trip the plaintiff suffered the

fracture of his right arm and other injuries, caused by the alleged fault and negligence of defendant's chauffeur. The defendant has taken the present appeal from a judgment awarding damages to the plaintiff.

About that time the old bridge over the Martín Peña Channel had been pulled down and while the present bridge was under construction, pedestrians and vehicles used to cross on a boarded path, over the iron bridge which was formerly used by the electric cars of the Porto Rico Railway, Light & Power Co. This is a narrow bridge and, although two buses traveling in opposite directions at the same time can pass each other, it becomes necessary for each vehicle to take to its right as much as possible so as to avoid a collision.

When approaching said bridge the plaintiff carried on his knees two books and upon them there was another which he was reading while he rested his right arm on the sill of the window corresponding to the seat he was occupying.

As appears from the evidence for the plaintiff, bus No. P–276 stopped before entering the bridge but it went on immediately afterwards without waiting for another bus to come out which was traveling in the opposite direction rather distant from the side of the bridge, and vehicle P–276, on entering the bridge was forced to swerve quickly to the right, according to some witnesses, and then plaintiff's right arm was pushed out of the bus and struck the bridge rail. Some of the witnesses for the plaintiff testified that the right-hand side of the bus also scraped the parapet of the bridge.

The evidence for the defendant does not deny the injuries sustained by the plaintiff, but the defendant sets up that its bus stopped, that the vehicle did not enter the bridge until a truck and a car traveling in the direction of Río Piedras had come out of the bridge. It denied that the other vehicle crossing the bridge at that moment belonged to it and invoked the doctrine of sudden jerks or jolts, claiming that on

entering the bridge the bus swerved to the right and thus plaintiff's arm was pushed outside the vehicle and received the injuries which had given rise to the judgment appealed from.

The defendant in its answer denied the charge of negligence and on the contrary alleged that the proximate cause of the accident was the negligence of plaintiff himself; it interposed the defense of contributory negligence; and, lastly, it attacked the complaint as insufficient.

The theory of the defendant, both as regards the demurrer and its denial of being guilty of negligence, is predicated upon the doctrine relative to jolts, jerks, and lurches of vehicles.

■■ It has been recognized by the courts that said sudden jolts, jerks, and emergency stops of vehicles do not always constitute negligence on the part of the carrier, such violent movements being due sometimes to defects in the streets or roads, at other times to unforeseen accidents caused by the carelessness of third persons or by traffic congestion, and occasionally to the inexcusable negligence of the driver or to a defect in the vehicle. In the first two cases they are sometimes unavoidable despite the exercise of the highest degree of care on the part of the carrier, and this is why they are generally accepted as risks assumed by the passenger when traveling in such vehicles. For this reason no fixed rule can be established applicable to all cases that may arise, it being necessary to determine each case on its own merits. See 10 American Jurisprudence, p. 213, *et seq.*

■ In *Louisville Ry. Co.* v. *Osborne,* 163 S. W. 189, 191, cited by the defendant, the Court of Appeals of Kentucky states the doctrine with admirable clearness, thus:

"We understand it to be the well-settled rule in this state that a carrier of passengers is not guilty of legal negligence arising from an alleged dangerous movement of the car, unless the movement was both unnecessary and unusual, and of sufficient violence to indicate

negligence in the operation of the car. It is not sufficient to constitute negligence in law that there may be an unusual movement of the car or a sudden jerk of the car. An unusual movement, under some circumstances, might be entirely necessary in the prudent operation of the car, and so, when the charge is that the movement was unusual, it should also appear that it was unnecessary, and when it is both unusual and unnecessary, and of sufficient violence to cause injury to a passenger, the jury may infer that the injury was caused by negligence in the operation of the car.''

A mere recital of the doctrine shows its inapplicability to the case at bar. The difficult situation in which the chauffeur of the defendant placed himself unnecessarily and which resulted in the violent jerk of the vehicle that caused the pushing out of plaintiff's arm, thus giving rise to the accident, was a situation brought about by the driver himself who could have avoided the same by the use of the diligence demanded by the circumstances.

Under either theory, that of the plaintiff or that of the defendant, the latter's negligence inevitably arises. Conceding, without admitting, the truth of its allegation that bus No. P-276 stopped before entering the bridge and that it did not go in until after the truck and the car already referred to had come out, we fail to see the necessity for the driver to take so far to his right that a mere swerving or deviation of the bus should cause plaintiff's arm, when pushed outside the window, to strike the bridge rail, especially if it is borne in mind that at that moment no other vehicle was on the said bridge. It is true that the Motor Vehicle Act prescribes that on the highway automobiles shall keep as far to the right as practicable, but there can be no doubt that it is negligence on the part of a driver to unnecessarily get so close to the edge of the road as to permit the vehicle, in one of its lurches, to slide into the ditch or over a precipice, with the resulting injuries to its passengers. If no other vehicle was actually on the bridge, as asserted by the defendant, it was the duty of the driver to move at a reasonable dis-

tance from the bridge rail, so as to avoid such an accident as occurred herein. If, as maintained by the plaintiff—and this seems to us most probable—at the time of entering the bridge there was coming out of it another bus which was not keeping properly to its right, defendant's chauffeur should also have waited, knowing the width of the bridge, until the other vehicle had come out before he drove his vehicle upon the bridge, thus avoiding risking the life of the passengers, who were entitled to the greatest care and circumspection on the part of the defendant as a public carrier.

In a lengthy monograph appearing in 96 A.L.R. 727, regarding the duty and liability of carriers of passengers by automobile, and on pages 755 and 756, two cases are quoted which, although considered by us to be extreme cases, illustrate our point of view, as well as the extraordinary degree of care required by law of public carriers respecting their passengers. In the first of them, *Dauplaise* v. *Yellow Taxicab Co.*, (1931), 204 Wis. 419, 235 N. W. 771, the plaintiff was traveling in an automobile of the defendant company on a clear night, with the car's lights in good condition, on a road of very little traffic. There was a mule in a ditch about ten feet from the road which jumped in front of the car and collided against it, causing injury to the plaintiff. It was held that there was evidence in the case from which it could be inferred that if the driver of the vehicle had operated the same attentively, he would have seen the mule and, in the exercise of ordinary care, could have so controlled his car as to avoid hitting the animal. The other case is that of *Stevens* v. *Yellow Cab Co.*, (1932, La. App.) 142 So. 807. There the plaintiff was riding in a car which proceeded in a line of traffic. Suddenly another car turned into the line of traffic ahead of the defendant's car and then stopped so abruptly as to cause the driver to bring the vehicle where plaintiff was traveling to a sudden and unexpected stop and the plaintiff was thrown against the glass windows in the partition between the rear portion of the car and the driver's

seat which resulted in the plaintiff having his nose injured. It was held that the defendant was liable for the injury sustained by the plaintiff, for, had the driver been alert, he would have seen the other car and not followed it so closely as to necessitate the sudden stop.

■ It is alleged in the complaint that between the plaintiff and the defendant there existed the relation of passenger and carrier. Negligence on the part of the latter is also alleged, and that such fact was the proximate cause of the accident with the resulting injury to the plaintiff. This being so, the complaint states all the necessary elements constituting the cause of action herein.

■ It remains now for us to consider whether the plaintiff was guilty of contributory negligence from the mere fact of resting his arm on the window sill. Let us see what is said in this respect by American Jurisprudence, vol. 10, p. 296:

"*Resting Arm on Window Sill.*—The authorities are in accord upon the proposition that it is not negligence per se for a passenger, whether upon a steam railroad or a street railway, to rest his arm on the sill of an open window, wholly within the car. He is not therefore precluded from recovering for an injury in that position, or for an injury resulting from his arm being pushed through the window by a jolt of the car."

There being no controversy as to the amount of the judgment, the same must be affirmed.