WALTER L. BOTHWELL, demandante, apelado y apelante, *v.* WHITE STAR BUS LINE, INC., demandada, apelante y apelada.

Núm. 8301.—*Sometido:* Noviembre 13, 1941. *Resuelto:* Noviembre 25, 1941.

*C. Iriarte, F. Fernández Cuyar* y *H. González Blanes,* abogados de la apelante; *Brown, González & Newsom,* y *E. Córdova Díaz,* abogados del apelado.

El Juez Asociado Señor De Jesús emitió la opinión del tribunal.

En la tarde del 2 de mayo de 1938 y frente a la entrada de la Universidad de Puerto Rico, tomó el demandante, en calidad de pasajero, el ómnibus número P–276, propiedad de la compañía demandada, que a la sazón se dirigía de Río Piedras a la ciudad de San Juan. En el curso del viaje sufrió el demandante la fractura del brazo derecho y otras lesiones por la alegada culpa y negligencia del chófer de la demandada y contra la sentencia dictada en resarcimiento de los daños y perjuicios estableció la demandada el presente recurso.

Para aquella fecha el antiguo puente sobre el caño de Martín Peña había sido destruído y mientras se construía el que hoy lo sustituye, peatones y vehículos pasaban por el puente de hierro con piso de madera por el cual discurrían anteriormente los carros eléctricos de la Porto Rico Railway, Light & Power Co. Este puente es estrecho y aunque da paso a dos ómnibus que viajen en dirección contraria al mismo tiempo, precisa que cada vehículo se aproxime bien a su derecha para evitar una colisión.

En los momentos de aproximarse a dicho puente, el demandante traía sobre sus piernas dos libros y sobre éstos descansaba otro que leía mientras viajaba, apoyando su brazo derecho sobre la ventanilla correspondiente al asiento que ocupaba.

Conforme resulta de la prueba del demandante, el ómnibus P–276 se detuvo antes de penetrar en el puente, pero inmediatamente prosiguió su marcha sin esperar a que saliese otro ómnibus que viajaba en dirección contraria, bastante retirado del costado del puente, y al penetrar en el mismo, el vehículo P–276 se vió precisado a hacer un movimiento rápido, una inclinación hacia su derecha, como dicen algunos testigos, y al hacer este movimiento, el brazo derecho del demandante proyectó fuera del ómnibus y chocó con

la baranda del puente, declarando algunos testigos del demandante que el costado derecho del ómnibus también rozó con la citada baranda.

La prueba de la demandada no niega las lesiones recibidas por el demandante, pero trata de defenderse alegando que su ómnibus se detuvo, que no penetró en el puente hasta no haber salido del mismo un camión y un automóvil que viajaban con dirección a Río Piedras. Niega que fuese otro vehículo de la demandada el que pasaba por el puente en aquellos momentos e invoca la doctrina de *jolts, jerks and lurches,* alegando que al penetrar en el puente, el ómnibus hizo una inclinación hacia la derecha, y fué así como al quedar fuera del vehículo el brazo del demandante, recibió las lesiones que motivaron la sentencia apelada.

En su contestación a la demanda negó la demandada haber incurrido en negligencia y alegó en contrario que la causa próxima del accidente fué la negligencia del propio demandante; interpuso la defensa de negligencia contribuyente y por último excepcionó la demanda por insuficiencia de hechos constitutivos de causa de acción.

La teoría de la demandada, tanto en lo que respecta a la excepción previa como a su negativa de ser ella culpable de negligencia, está predicada en la doctrina de *jolts, jerks and lurches* (sacudidas, brincos o movimientos bruscos).

Se admite por la jurisprudencia que tales sacudidas violentas, saltos de los vehículos y paradas súbitas en caso de emergencia, no siempre constituyen negligencia por parte del porteador, siendo motivados estos accidentes unas veces por el mal estado de las calles o caminos, y otras por accidentes imprevistos causados por imprudencia de terceras personas o por congestión del tránsito y en ocasiones por la negligencia inexcusable del conductor o por defecto del vehículo. Los dos primeros casos son a veces inevitables, a pesar de que el porteador ejercite el más alto grado de cuidado, y por eso generalmente se consideran como riesgos que asume el pasajero al montar en estos vehículos. Por

esta razón no puede establecerse una regla fija aplicable a todos los casos que puedan surgir, siendo necesario resolver cada caso por sus propios méritos. Véase 10 American Jurisprudence, págs. 213 *et seq.*

En el caso de *Louisville Ry. Co.,* v. *Osborne,* 163 S.W. 189, 191, citado por la demandada, la Corte de Apelaciones de Kentucky expone la doctrina con admirable claridad, así:

"Sostenemos que es regla bien establecida en este Estado que un porteador de pasajeros no es culpable de negligencia proveniente de un alegado movimiento peligroso del vehículo, a menos que dicho movimiento hubiese sido innecesario e inusitado y de tal violencia que indique negligencia en el manejo del vehículo. No es suficiente para que exista negligencia que haya habido un movimiento inusitado o un brinco o salto del vehículo. Un movimiento inusitado, bajo ciertas circunstancias, podría ser enteramente necesario aun ejercitando el mayor grado de cuidado en el manejo del vehículo, y por consiguiente cuando se alega que el movimiento fué inusitado deberá demostrarse que fué innecesario, y cuando sea inusitado e innecesario y de suficiente violencia para causar daño a un pasajero, el jurado podrá inferir que el daño fué causado por negligencia en el manejo del vehículo."

La mera exposición de la doctrina demuestra su inaplicabilidad al caso de autos. La situación difícil en que innecesariamente se colocó el chófer de la demandada y que dió lugar al movimiento que hiciera el vehículo con tal violencia que echó fuera el brazo del demandante, dando lugar así al accidente, fué una situación provocada por el propio conductor, que pudo haberlo evitado si hubiese ejercitado la diligencia que demandaban las circunstancias.

Bajo cualquiera de las dos teorías, la del demandante o la de la demandada, surge inevitablemente la negligencia de esta última. Asumiendo sin aceptarlo que sea cierta su alegación de que el ómnibus P–276 se detuvo antes de entrar al puente y que no penetró hasta después de haber salido el camión y el automóvil antes aludidos, no vemos qué necesidad tenía el conductor del vehículo de apro-

ximarse tanto a su derecha que una mera inclinación o desviación del ómnibus diera lugar a que el brazo del demandante, al proyectar fuera de la ventanilla, chocase con la baranda del puente, especialmente si se tiene en cuenta que en aquellos momentos no había ningún otro vehículo en dicho puente. Es verdad que la Ley de Automóviles preceptúa que en los caminos públicos los automóviles se aproximen a su derecha tanto como les sea posible, pero nadie dudará que es negligente el conductor de un vehículo que innecesariamente se aproxima tanto a la orilla del camino que da lugar a que dicho vehículo, en una de estas sacudidas, se deslice a la cuneta o por un precipicio, con el consiguiente daño a sus pasajeros. Si en verdad en el puente no había ningún otro vehículo, como asegura la demandada, era obligación del conductor marchar a una razonable distancia de la baranda, de forma que impidiese un accidente como el ocurrido en este caso. Si como sostiene el demandante, y esto nos parece lo más probable, en los momentos de entrar al puente trataba de salir del mismo otro ómnibus que no marchaba justamente por su derecha, también debió esperar el chófer de la demandada, conociendo el ancho del puente, a que acabase de salir el otro vehículo para entonces entrar el suyo, evitando así exponer la vida de los pasajeros, a los cuales como porteador público debía la demandada el más alto grado de cuidado y circunspección.

En una extensa monografía que aparece en 96 A.L.R. 727, sobre el deber y responsabilidad de los porteadores de pasajeros en automóvil, y a las páginas 755 y 756, se citan dos casos que aunque los consideramos extremos, ilustran nuestro punto de vista, así como el extraordinario grado de cuidado que la ley exige de los porteadores públicos en relación con sus pasajeros. En el primero de ellos, el de *Dauplaise* v. *Yellow Taxicab Co.*, (1931), 204 Wis. 419, 235 N.W. 771, el demandante viajaba en un automóvil de la compañía demandada en una noche clara, con las luces del vehículo en buenas condiciones, por una carretera de muy

poco tránsito. En la cuneta se hallaba una mula, como a diez pies de la carretera, la que saltó frente al automóvil, y al chocar con éste produjo daños al demandante. Se sostuvo que existía evidencia en el caso de la que podía inferirse que si el chófer del vehículo lo hubiese guiado con la debida atención, hubiese visto la mula y en el ejercicio de ordinaria diligencia hubiera podido controlarlo y evitar el choque con el animal. El otro es el de *Stevens* v. *Yellow Cab Co.*, (1932, La. App.) 142 So. 807. En dicho caso el demandante viajaba como pasajero en un automóvil que a la sazón marchaba entre otros en una línea de tránsito. Súbitamente un automóvil se colocó en la línea delante del carro en que viajaba el demandante e inmediatamente paró, de tal forma. que obligó al conductor del vehículo en que viajaba el demandante a detenerse tan súbita e inesperadamente que el demandante fué lanzado contra las ventanillas del cristal que separaban la parte de atrás del carro del sitio que ocupaba el chófer, y con motivo de ese choque el demandante se hirió la nariz. Se sostuvo que la demandada era responsable de los daños sufridos por el demandante, porque si el conductor del vehículo hubiera venido alerta, hubiera visto el otro automóvil y no lo hubiera seguido tan de cerca que necesitase parar súbitamente.

En la demanda se alega que entre el demandante y la demandada existió la relación de pasajero y porteador. Se alega también el acto de negligencia de la segunda, y que dicho acto fué la causa próxima del accidente, con el consiguiente daño al demandante. Siendo ello así, la demanda contiene los elementos necesarios constitutivos de la causa de acción ejercitada.

Réstanos ahora considerar si el demandante incurrió en negligencia contribuyente por el mero hecho de llevar su brazo apoyado sobre la ventanilla. Veamos lo que sobre el particular dice American Jurisprudence:

"*Apoyar el brazo sobre la ventanilla.*—Las autoridades están de acuerdo en la proposición de que no constituye negligencia *per se*

por parte de un pasajero, ya viaje en un ferrocarril o tranvía urbano, apoyar el brazo sobre la ventanilla abierta, siempre que dicho brazo quede totalmente dentro del vehículo. Por consiguiente, no está impedido de obtener indemnización al sufrir daños mientras va en esa posición o por el que resulte al proyectar el brazo fuera de la ventanilla impelido por un salto o sacudida del vehículo.'' Ob. cit., t. 10, pág. 296.

No existiendo controversia en cuanto a la cuantía de la sentencia, *procede su confirmación.*